IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| LYNN B. THOMAS, | : | |
| | : | |
| Plaintiff, | : | CIVIL ACTION |
| | : | |
| v. | : | No. 08-03411 |
| | : | |
| PATHMARK STORES, INC., | : | |
| | : | |
| Defendant. | : | |
| | : | |

**MEMORANDUM RE: MOTION TO DISMISS**

**Baylson, J.**                                                                                          **December 24, 2008**

Presently before the Court is Defendant's Motion to Dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6). Plaintiff has filed suit against his prior employer alleging claims of racial discrimination, hostile work environment, retaliatory discharge, and wrongful discharge under various state and federal laws. For the reasons discussed below, this Court will deny the Motion with respect to all claims except the state wrongful discharge claim, which the Court will dismiss.

I.   **Background Information**

   A.   **Facts and Allegations in the Complaint**

Plaintiff, Lynn B. Thomas, alleges that he worked as a butcher for Defendant, Pathmark Stores, Inc. ("Pathmark" or "Defendant"), from July 2, 1994 until his termination on June 26, 2006. Throughout that time, Plaintiff worked at various Pathmark locations in Philadelphia and in Wilmington, Delaware.

Plaintiff asserts that on Saturday June 10, 2006 he witnessed Tommy Vince Jeppi, the Meat Manager to whom Plaintiff reported at the Glenolden, Pennsylvania store, "slicing boneless chicken on a meat slicer without first cleaning and sanitizing the meat slicer."  (Compl. ¶ 17.)  Plaintiff suggests that Mr. Jeppi's conduct violated the Pennsylvania Food Code and Defendant's Meat Procedures Manual.  (Compl. ¶ 26.)  Plaintiff alleges that he reported this conduct to the Assistant Store Manager, Joe Edis, who then reported the incident to Store Assistant Manager, Robert Taylor.  (Compl, ¶ 18.)  Plaintiff further alleges that he had previously reported improper conduct by Mr. Jeppi after he observed Mr. Jeppi discarding and destroying "thousands of dollars worth of store merchandise without first recording it."  (Compl. ¶ 19.)

According to Plaintiff, Mr. Jeppi was not disciplined for his conduct on June 10th, but on June 11, 2006, Mr. Taylor informed Plaintiff that Plaintiff had "'hurt himself" by reporting Mr. Jeppi's conduct.  (Compl. ¶s 21, 22.)  Plaintiff alleges that on June 13, 2006, Plaintiff was told he was suspended, pending an investigation, for using two Pathmark Advantage Club ("PAC") Cards, one of which belonged to a deceased former employee and one of which belonged to Plaintiff, to redeem coupons approximately three weeks earlier.  (Compl. ¶s 23, 24.)  On June 26, 2006, Plaintiff was terminated from his employment with Defendant.  (Compl. ¶ 25.)   Plaintiff alleges that but for his report of Mr. Jeppi's conduct, Plaintiff would not have been terminated based on the alleged PAC Card violation.  (Compl. ¶ 26.)

Plaintiff further asserts that on or about March 7, 2000 Plaintiff had filed a Charge of Discrimination against Defendant with the United States Equal Employment Opportunity Commission ("EEOC"), which was cross-filed with the Pennsylvania Human Relations Commission ("PHRC").  (Compl. ¶ 27.)   According to Plaintiff, the EEOC issued a

determination of probable cause, but the Charge was later settled for a monetary amount. (Compl. ¶s 28, 29.)  Plaintiff alleges that his filing of the earlier Charge and subsequent settlement were additional factors in Defendant's decision to terminate Plaintiff on June 26, 2006.  (Compl. ¶ 30.)

Plaintiff also alleges that the earlier Charge and settlement were factors in Defendant's failure to promote Plaintiff to Assistant Meat Manager (Compl. ¶ 43.)  According to Plaintiff, he submitted "Bid Cards" for the managerial position on several occasions and spoke with the Human Resources Department Director as well as another Human Resources Department official about the promotion, but his requests and application were ultimately denied.  (Compl. ¶s 35-37.)  Plaintiff alleges that during the EEOC investigation in the instant case, Defendant claimed Plaintiff's failure to take the Department Manager's Test was the reason for denying the promotion.  (Compl. ¶ 38.)  However, Plaintiff asserts that completion of that test was required only for promotions to the position of Department Manager and that another employee was promoted to Assistant Meat Manager without taking the Test.  (Compl. ¶s 39, 40.)

Plaintiff further alleges that his race was a substantial factor in Defendant's decision to terminate Plaintiff and in its failure to promote Plaintiff to Assistant Meat Manager.  (Compl. ¶s 33, 42.)  Plaintiff suggests that other Pathmark employees have committed PAC Card violations but either were not discharged or their discharges were reinstated.  (Compl. ¶ 31.)  Plaintiff alleges that the only significant difference between those employees and Plaintiff is that the other employees are all Caucasian while Plaintiff is African-American.  (Compl. ¶ 32.)  Similarly, Plaintiff alleges his race was a substantial motivating factor in denying the promotion and asserts that the only significant difference between Plaintiff and the other employee who was promoted

to Assistant Meat Manager is race, as Plaintiff is African-American and the other employee is Caucasian. (Compl. ¶s 41, 42.)

Finally, Plaintiff alleges that while he worked in Defendant's stores he was subjected to racial harassment and a racially hostile work environment. (Compl. ¶ 45.) Specifically, Plaintiff contends that he was subjected to such treatment by the Assistant Store Manager, Store Manager, and other store employees while working at a store on Cottman Avenue in Philadelphia and by Mr. Jeppi, the Meat Manager, at the store in Glenolden, Pennsylvania. (Compl. ¶s 45, 46.) Plaintiff alleges that such harassment included discrimination in the terms, conditions, and privileges of employment as well as retaliation for the earlier Charge filed with the EEOC. (Compl. ¶s 47-48.) Plaintiff alleges he reported this harassment to management but management failed to take corrective action. (Compl. ¶ 49.)

As a result of the actions of Defendant, Plaintiff alleges he has "suffered personal and psychological injuries for which he as [sic] sought and will continue to require professional care, personal embarrassment, professional setbacks, injury to his reputation and good name, personal pain, suffering and humiliation, all of which will continue to deleteriously affect him for an indefinite period of time in the future, to his great detriment and loss." (Compl. ¶ 51.)

    **B.**    **Procedural History**

        **1.**    **EEOC Proceedings**

Plaintiff filed a Charge of Discrimination with the EEOC on April 4, 2007. (Compl. ¶ 64). On June 11, 2008, the EEOC issued its Determination, in which it concluded that Plaintiff was not retaliated against for filing and settling the earlier Charge. (Compl., Ex. C.) However, the EEOC did determine that Plaintiff was subjected to discriminatory treatment and terminated

due to his race, as evidenced by Defendant's different treatment of a white employee who also misused the PAC card. (Id.) The EEOC then issued a Notice of Right to Sue on June 19, 2008. (Compl., Ex. A.)

### 2. State Court Suit

Plaintiff filed suit in the Court of Common Pleas for the County of Philadelphia on June 23, 2008. (See Doc. No. 1.) Plaintiff's Complaint included eleven counts:

| | |
|---|---|
| Count I | Wrongful discharge claim under state common law |
| Count II | Improper Retaliation claim under Title VII (42 U.S.C. § 2000(e))[1] |
| Count III | Racial Discrimination claim under Title VII |
| Count IV | Hostile Work Environment claim under Title VII |
| Count V | Improper retaliation claim under the Civil Rights Act ("CRA") (42 U.S.C. § 1981(a)- (c))[2] |
| Count VI | Racial Discrimination claim under the CRA |
| Count VII | Hostile Work Environment claim under the CRA |
| Count VIII | Improper retaliation claim under the Pennsylvania Human Relations Act ("PHRA") (43 P.S. §§ 951, et seq.)[3] |

---

[1] Under Title VII, an employer cannot "fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2.

[2] The Civil Rights Act states in relevant part:

> All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other.

42 U.S.C. § 1981(a). The Act further commands that "the rights protected by this section are protected against impairment by nongovernmental discrimination and impairment under color of State law." 42 U.S.C. § 1981(c).

[3] The PHRA makes it unlawful

  Count IX  Racial Discrimination claim under the PHRA
  Count X   Hostile Work Environment claim under the PHRA
  Count XI  Intentional Infliction of Mental and Emotional Distress claim under state common law

In the wrongful discharge claim, Plaintiff suggests Defendant terminated him due to Plaintiff's internal reporting of the Food Act violations. Plaintiff's retaliation claims assert that Plaintiff was not promoted and was eventually terminated in response to his earlier filing of an EEOC Charge in 2000. Plaintiff further alleges in the racial discrimination claims that his termination was racially motivated and was not motivated by his PAC card violation. Finally, Plaintiff contends that Defendant created a hostile work environment by failing to address or correct racial harassment in the workplace, which Plaintiff reported to management.

Defendant removed to federal court pursuant to 28 U.S.C. § 1441 on July 21, 2008. Defendant then filed its Motion to Dismiss Counts I, II, IV, V, VIII, X, and XI of the Complaint on August 27, 2008.[4] Defendant does not challenge Counts III, VI, VII, and IX.

## II. Parties' Contentions

### A. Defendant

Defendant moves to dismiss Count I, which alleges wrongful discharge under

---

[f]or any employer because of the race, color, religious creed, ancestry, age, sex, national origin or non-job related handicap or disability . . . to refuse to hire or employ or contract with, or to bar or to discharge from employment such individual or independent contractor, or to otherwise discriminate against such individual or independent contractor with respect to compensation, hire, tenure, terms, conditions or privileges of employment or contract, if the individual or independent contractor is the best able and most competent to perform the services required.

43 P.S. § 955(a).

[4]In his response to Defendant's Motion to Dismiss, Plaintiff agreed to dismiss Count XI.

Pennsylvania common law, because, according to Defendant, Plaintiff did not establish that his report regarding Mr. Jeppi's improper conduct falls within the public policy exception to the employment-at-will-doctrine, which allows an employer to fire an employee for any reason when there is no employment contract governing the relationship.  (Def.'s Memo at 4-7.)

Defendant also moves to dismiss Counts II, V, and VIII, which allege that Defendant engaged in retaliatory conduct for Plaintiff's earlier EEOC Charge and settlement, in violation of Title VII, the Civil Rights Act, and the PHRA respectively.  Defendant asserts that Plaintiff has failed to allege facts sufficient to establish a causal connection between the alleged protected activity–the filing of the EEOC Charge six years earlier–and the alleged adverse employment action–failing to promote Plaintiff, failing to respond to racial harassment and a hostile working environment, and finally terminating Plaintiff.  (Id. at 7-9.)  Defendant specifically notes that the six years between the two events is far beyond the amount of time courts in this District have previously considered to infer a causal relationship.  (Id. at 8-9.)

Finally, Defendant moves to dismiss Counts IV and X, which allege that Defendant failed to correct reported instances of racial harassment that created a hostile working environment for Plaintiff, in violation of Title VII and the PHRA.  Defendant argues that Plaintiff failed to exhaust his administrative remedies with respect to this claim because the Charge before the EEOC and/or the Pennsylvania Human Rights Commission ("PHRC") did not include claims relating to a hostile work environment.  (Id. at 9-11.)

### B. Plaintiff

With regard to the wrongful discharge claim, Plaintiff responds that reporting a failure to comply with state regulations on the handling of food must fall within the public policy

exception to the employee-at-will doctrine, as compliance with the food regulations is extremely important to the public health and safety. (Pl.'s Memo at 3-4.) Plaintiff further argues that he has sufficiently established a causal connection for the retaliation claims because the Third Circuit has held that where a longer amount of time has passed between the protected activity and allegedly retaliatory conduct, courts may find causation based on consideration of other factors. (Id. at 5.) Plaintiff suggests that he should be allowed to pursue discovery on these other factors to determine if Defendant engaged in other conduct that would allow a jury to conclude it had take retaliatory action against Plaintiff. (Id. at 5-6.) Finally, Plaintiff asserts that he properly exhausted his administrative remedies for the hostile work environment claims because a plaintiff is not necessarily barred from bringing a claim that is related to its earlier complaint but was not part of the EEOC's investigation. (Id. at 6.) Plaintiff argues that his harassment and hostile work environment claims "grow out of his discriminatory complaints to the EEOC." (Id.)

### III.  Legal Standards

#### A.  Jurisdiction

This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1332 because the parties are citizens of different states and the amount in controversy exceeds the sum or value of $75,000, exclusive of interest and costs.

#### B.  Standard of Review

When deciding a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), the Court may look only to the facts alleged in the complaint and its attachments. Jordan v. Fox, Rothschild, O'Brien & Frankel, 20 F.3d 1251, 1261 (3d Cir. 1994). The Court must accept as true all well-pleaded allegations in the complaint and view them in the light most favorable to the

plaintiff.  Angelastro v. Prudential-Bache Sec., Inc., 764 F.2d 939, 944 (3d Cir. 1985).  A motion to dismiss for failure to state a claim should not be granted "unless it clearly appears that no relief can be granted under any set of facts that could be proved consistently with Plaintiff's allegations."  Jordan, 20 F.3d at 1261 (citing Hishon v. King, 467 U.S. 69, 73 (1984)).

A valid complaint requires only "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  In order to state a valid complaint a plaintiff must make a "showing" that is more than just a blanket assertion that he is entitled to relief.  Phillips v. County of Allegheny, 515 F.3d 224, 232 (3d Cir. 2008).  "We caution that without some factual allegation in a complaint, a claimant cannot satisfy the requirement that he or she provide not only 'fair notice' but also 'grounds' on which the claim rests."  Id. (citing Bell Atlantic Corp. v. Twombly, 127 S.Ct. 1955, 1965 n.3 (2007)).

## IV.  Discussion

### A.  Retaliation and Hostile Work Environment Claims

The Court will first deal with the retaliation and hostile work environment claims raised in Counts II, IV, V, VIII, and X.  Recognizing that notice pleading together with the standard of review under a motion to dismiss requires the Court give the plaintiff the benefit of all favorable inferences, the Court will deny the motion to dismiss the state and federal claims based on retaliation (Counts II, V and VIII) and hostile work environment (Counts IV and X), all of which are based on allegations of racial discrimination.[5]

---

[5] The Court will treat Plaintiff's state and federal claims together for both the retaliation and hostile work environment allegations because claims brought under the PHRA are analyzed under the same standard as those brought under Title VII and the CRA.  Pawlak v. Seventenn HB Philadelphia Corp., 2005 WL 696878, at *8 n. 9 (E.D. Pa. March 2005); see also Weston v. Pennsylvania, 251 F.3d 420, 425 n.3 (3d Cir. 2001) ("Pennsylvania courts have construed the

As to the retaliation claims, the Court finds that although the allegation of retaliation relates back six years to the first EEOC complaint, which is well outside the temporal limits of most reported cases, this case is distinguishable from those relied on by Defendant. In the instant case, Plaintiff ties the earlier EEOC filing alleging racial discrimination to allegations of recent discrimination. Plaintiff claims Defendant's stated reason for the termination–the misuse of the PAC card–cannot be the real motivation for Plaintiff's discharge because Defendant did not similarly terminate a white co-worker who was engaged in the same conduct. Plaintiff thus asserts the earlier filing and racial factors are the actual reasons for the termination. Plaintiff similarly alleges the failure to promote him was not based on Plaintiff's failure to take the Manager's Test, as Defendant suggests, because another employee, who was white, was promoted without taking the test. Again, Plaintiff contends that the earlier filing and racial factors are responsible for Defendant's decision not to promote him.

Notably, the Third Circuit has observed,

> [W]here the time between the protected activity and adverse action is not so close as to be unusually suggestive of a causal connection standing alone, courts may look to the intervening period for demonstrative proof, such as actual antagonist conduct or animus against the employer, . . . or other types of circumstantial evidence, <u>such as inconsistent reasons given by the employer for terminating the employee or the employer's treatment of other employees</u>, that give rise to an inference of causation when considered as a whole.

Marra v. Philadelphia Housing Auth., 497 F.3d 286, 302 (3d Cir. 2007) (citing Farrell v. Planters Lifesavers Co., 206 F.3d 271, 283-84 (3d Cir. 2000)) (emphasis added). Therefore, at this stage of the litigation, Plaintiff has sufficiently alleged a causal connection between the earlier EEOC filing and his later termination for Plaintiff's claims to survive a motion to dismiss and proceed

---

protection of [Title VII and the PHRA] interchangeably.").

to discovery.

Furthermore, with regard to the hostile work environment claim, the Court will give a liberal interpretation, for purposes of the motion to dismiss only, to the content of the Plaintiff's claim before the EEOC. The Court therefore finds that the Plaintiff has satisfied his duty to exhaust. Although Plaintiff did not include racial discrimination within its EEOC claim for retaliatory discharge based on the Food Act reporting, the EEOC's investigation revealed that such conduct had possibly occurred. As the hostile work environment claim is based on failure to address racial discrimination, the Court finds that the claim is sufficiently related to the claims before the EEOC to satisfy the exhaustion requirement.

The Court emphasizes that this ruling is required under established legal principles, giving the Plaintiff the benefit of all reasonable inferences. A detailed discussion of the underlying legal principles would not serve any purpose. Although the court has reviewed the parties' briefs, this case is sufficiently similar to others in which courts have allowed similar claims to go forward. See, e.g., Hicks v. ABT Assoc., Inc., 572 F.2d 960, 966 (3d Cir. 1978) (holding claim not included in original charge may proceed where reasonable investigation of the claims in the charge would have uncovered the contested claim); Smith-Cook v. Nat'l Railroad Passenger Corp. (AMTRAK), 2005 WL 3021101 (E.D. Pa. Nov. 10, 2005) ("Claims are considered within the scope of the prior EEOC complaint if they arise during the pendency of the EEOC investigation, are closely related to conduct alleged in the charge, or are explanations of the original charge."). The Court will allow some discovery on these issues, but it must focus on the racial discrimination.

Thus, the Court will deny Defendant's motion to dismiss as to the retaliation and hostile

work environment claims brought under both state and federal law.

### B.    Wrongful Discharge Claim (Count I)

However, the Court has determined that Plaintiff's unlawful discharge claim does not state a claim under existing Pennsylvania law and will therefore grant the motion to dismiss with respect to Count I.

For over a century, the Pennsylvania Supreme Court has reiterated that unless an employment contract exists, an employer may terminate an employee for any reason. McLaughlin v. Gastrointestinal Specialists, Inc., 750 A.2d 283, 286 (Pa. 2000) (citing Henry v. Pittsburgh & Lake Erie Railroad Co., 21 A. 157 (1891)).  There is a strong presumption under Pennsylvania law that all non-contractual employment relationships are at-will, McLaughlin, 750 A.2d at 287, and employees have the burden of overcoming that presumption, Luteran v. Loral Fairchild Corp., 688 A.2d 211, 214 (Pa. Super. 1997).  An at-will employee will be entitled to bring a suit challenging a termination of employment "only in the most limited of circumstances where the termination implicates a clear mandate of public policy in this Commonwealth." McLaughlin, 750 A.2d at 287; see also Shick v. Shirley, 716 A.2d 1231, 1232 (Pa. 1998) ("[W]here the complaint itself discloses a plausible and legitimate reason for terminating an at-will employment relationship and no clear mandate of public is violated thereby, an employee at will has no right of action against his employer for wrongful discharge.").

In delineating the scope of the public policy exception, the Pennsylvania Supreme Court has noted,

> It is only when a given policy is so obviously for or against the public health, safety, morals or welfare that there is a virtual unanimity of opinion in regard to it, that a court may constitute itself the voice of the community in so declaring.

> There must be a positive, well-defined, universal public sentiment, deeply integrated in the customs and beliefs of the people and in their conviction of what is just and right and in the interests of the public . . . .

Mamlin v. Genoe, 17 A.2d 407, 409 (Pa. 1941).  The conduct of the employer must violate a public mandate that "strikes at the heart of a citizen's social right, duties, and responsibilities." Hineline v. Stroudsburg Electric Supply Co., 559 A.2d 566, 568 (Pa. Super. 1989) (internal citations omitted).

For example, the Pennsylvania Supreme Court has recognized a common law cause of action for wrongful discharge when an employer fires an employee in retaliation for bringing a workers compensation claim because such action by the employer violates public policy.  Shick 716 A.2d at 1232.  Shick rejected the notion that what may be considered public policy is only that which is enacted by the legislature and held that the absence of a statutory remedy specifically addressing retaliatory discharge for filing a workers compensation claim does not indicate that no public policy against such conduct exists.  716 A.2d at 1235.  The court held that the fact that the Workers Compensation Act provides the exclusive remedy for injuries sustained during the course of employment and strikes a delicate balance between the interests of employers and employees indicated the importance of that Act; allowing an employer to terminate an employee for pursuing his claim under the Act would undermine the legislature's goals in enacting the Act.  Id. at 237.

Similarly, in Highhouse v. Avery Transportation, 660 A.2d 1374, 1378 (Pa. Super. 1995), the court determined that an employee had a common law claim for wrongful discharge when he was constructively discharged after filing for unemployment benefits.  The court explained that Pennsylvania courts "have consistently held that employers violate the public policy of this

Commonwealth by discharging employees for exercising legal rights." Id. at 1377.

Earlier cases have likewise found violations of public policy where the employee was discharged for exercising legal rights. See, e.g., Kroen v. Bedway Security Agency, Inc., 633 A.2d 628 (Pa. Super. 1993) (holding discharge of at-will employee for refusal to submit to polygraph test violates public policy); Perks v. Firestone Tire & Rubber Co., 611 F.2d 1363, 1366 (3rd Cir.1979) (concluding that termination for failure to submit to a polygraph test violates public policy where a Pennsylvania statute specifically forbid employers from requiring submission to such a test); Field v. Philadelphia Electric Co., 565 A.2d 1170, 1180 (Pa. Super. 1989) (concluding employees had a claim where they alleged they were discharged after one employee reported a violation of regulations of the Nuclear Regulatory Commission and the employees had a statutory duty to report such violations); Reuther v. Fowler & Williams, Inc., 386 A.2d 119, 120-21 (Pa. Super. 1978) (finding public policy violation where an employer fired an employee for serving on a jury because serving on a jury is a necessary duty of all citizens and failure to appear is punishable by a fine).

In contrast, in Geary v. U.S. Steel Corporation, 319 A.2d 174, 176 (Pa. 1974), the Pennsylvania Supreme Court rejected the wrongful discharge claim of an employee who was terminated after voicing his opinion to superiors that testing for a new product was inadequate and the product could be dangerous. The court held that there was no grounds for inferring a retaliatory discharge when the employee had no expertise in evaluating the safety of testing products, the employee had failed to follow procedure by bypassing his immediate superiors in his complaint, and the product was later pulled from the market. In Hineline v. Stroudsburg Electric Supply Co., 559 A.2d 566, 569 (Pa. Super. 1989), the Court held that a terminated

employee who dismantled his employer's illegal video surveillance system did not fall within the public policy exception because the employee had no right to disengage the system and failed to report to proper authorities.

Plaintiff does not appear to challenge the at-will nature of his relationship with Defendant. Rather, Plaintiff asserts that his reporting of the Food Code violations to his superior is protected conduct under the public policy exception to the at-will employment relationship. Essentially, Plaintiff argues that allowing Defendant to retaliate against his report undermines the goals of the Food Act and thus harms the public interest.

Unlike the claim under the Workers Compensation Act in Shick, the Food Act does not provide a specific right to employees or strike a delicate balance between the interests of employers and employees. The Food Act provides standards for entities in the food business to follow and does not govern the relationship with employees at all. Furthermore, employees do not have a duty under the Act to report violations, and thus reporting violations of the Act is not an exercise of a legal right or responsibility, as is filing for unemployment benefits, refusing to submit to a polygraph test, or serving on a jury. Even when an employer's actions are potentially harmful to the public, as in Geary, or illegal, as in Hineline, Pennsylvania courts have failed to find a violation of public policy. The Court cannot find that private reporting of Food Act violations is "so deeply integrated in the customs and beliefs of the people," Mamlin, 17 A.2d at 409, or sufficiently "strikes at the heart of a citizen's social rights, duties, and responsibilities," Hineline, 559 A.2d at 568, to fall within the narrow public policy exception. Thus Plaintiff's claim for wrongful discharge will be dismissed.

An appropriate order follows.

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| LYNN B. THOMAS, | : | |
| | : | |
| Plaintiff, | : | CIVIL ACTION |
| | : | |
| v. | : | No. 08-03411 |
| | : | |
| PATHMARK STORES, INC., | : | |
| | : | |
| Defendant. | : | |

**<u>ORDER</u>**

AND NOW, this 24th day of December, 2008, it is hereby ORDERED that Defendant's Motion to Dismiss (Doc. No. 4) is GRANTED with respect to Count I and DENIED with respect to Counts II, IV, V, VIII, and X.

BY THE COURT:

/s Michael M. Baylson
Michael M. Baylson, U.S.D.J,

O:\CIVIL 07-08\08-3411 Thomas v. Pathmark\mtd memo.wpd